COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Benton and Overton
Argued at Norfolk, Virginia


JOHN LEROY BOND
                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2476-95-1      JUDGE NELSON T. OVERTON
                                         DECEMBER 31, 1996
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                    E. Everett Bagnell, Judge

           James L. McLemore, III, for appellant.

           Margaret Ann B. Walker, Assistant Attorney
           General (James S. Gilmore, III, Attorney
           General, on brief), for appellee.


     John Leroy Bond was convicted of possession of a firearm

after having been convicted of a felony.  We hold that the

evidence is sufficient to support the conviction, and we affirm.

     "A conviction for knowingly and intentionally possessing a

firearm after having been convicted of a felony, see Code

§ 18.2-308.2, requires proof beyond a reasonable doubt of either

actual or constructive possession of the firearm."  Hancock v.

Commonwealth, 21 Va. App. 466, 468, 465 S.E.2d 138, 139 (1995);

see Blake v. Commonwealth, 15 Va. App. 706, 708, 427 S.E.2d 219,

220 (1993).  To support a conviction based on constructive

possession, the Commonwealth must prove that the defendant "was

aware of both the presence and character of the [item] and that

it was subject to his dominion and control."  Hancock, 21 Va.

          [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

App. at 469, 465 S.E.2d at 140 (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)) (alteration in original).

An exception from this strict rule exists in certain situations. Almost one hundred and thirty years ago, the United States Supreme Court in United States v. Kirby, 74 U.S. 482 (1868), discussed the need to distinguish circumstances in which apparent criminal conduct would be justifiable and declared to be lawful because of necessity.

> The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, "that whoever drew blood in the streets should be punished with the utmost severity," did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of 1st Edward II, which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire – "for he is not to be hanged because he would not stay to be burnt." And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding of the passage of the mail, or of its carrier, does not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder.

Id. at 487.

In analogous reasoning, this Court has recognized that "'[f]or reasons of social policy, it is better that the defendant, faced with a choice of evils, choose to do the lesser evil (violate the criminal law) in order to avoid the greater

- 2 -

evil threatened by the other person.'"  <u>Daung Sam v.</u>
<u>Commonwealth</u>, 13 Va. App. 312, 323, 411 S.E.2d 832, 838 (1991)
(citation omitted).

Initially, Bond's actions may have placed his possession of
the firearm into this exception.  The evidence proved that Willie
Deloatch engaged in a fight with another man.  Later, when highly
intoxicated, Deloatch approached the man and a group of people on
a street.  Deloatch was holding a gun.  A woman in the group, who
knew that Bond was Deloatch's friend, went to Bond's grocery
store and asked Bond if he would intervene with Deloatch to stop
the incident.  Bond, who had been friends with Deloatch for
thirty years, went to confront Deloatch.

When Bond arrived, Deloatch had fired the gun three times.
Deloatch was intoxicated, had a swollen eye, and was angrily
threatening the man with the gun.  Bond spoke with Deloatch and
attempted to calm him.  Bond testified that Deloatch's mother had
recently died and that Deloatch was upset, crying, and uncaring
about his own conduct.  Deloatch announced that he intended to
shoot the man.  After Bond reasoned with Deloatch, Deloatch gave
him the gun.

Bond coaxed Deloatch into his car and drove with Deloatch to
Gwendolyn Golden's residence.  Golden was Bond's romantic friend
and a person whom Deloatch respected.  Bond explained to Golden
what had occurred and asked to leave the gun with her until
Deloatch was sober.  She agreed.  Bond placed the gun on top of a

high cabinet in Golden's kitchen and left with Deloatch.

Two years later, when the police were searching Golden's residence in connection with another matter, a police officer found the gun atop the cabinet. The gun had dust on it and had been undisturbed. The officer testified that the accumulation of dust indicated to him that the gun had been on the cabinet for a long time. Golden testified that she had forgotten about the gun until the police found it.

After the discovery of the gun, another police officer went to Bond's store and questioned Bond about the gun. Bond testified that he then remembered the gun and explained the incident involving Deloatch. The officer arrested Bond for possession of a firearm after having been convicted of a felony. After his arrest, Bond gave the police a written statement in which he stated that he had taken the gun from Deloatch to "keep a person from getting hurt" and that he placed the gun atop a cabinet over the sink at Golden's residence.

The trial judge ruled that Bond's initial, actual possession was justifiable. That ruling was based on the following findings:

> Mr. Bond, in this case I would agree with what your lawyer said that the Court certainly would not find you guilty of possessing a firearm under the circumstances that you took it. No question you took it under circumstances where you were trying to prevent someone from getting hurt and rightfully so. You did the right thing, no question. I don't think no Judge, nor no jury in the world would convict you of possessing a firearm under those

- 4 -

circumstances because you didn't really intentionally possess it at that time. The problem arises after that.

The trial judge then found Bond guilty of constructive possession of the gun because the gun remained in Golden's residence. The judge stated the following rationale for the conviction:

Now, the code does not allow a convicted felon to hold a firearm for someone else as an agent, fiduciary or any capacity. A convicted felon is not allowed to hold a gun for someone, other than some emergency purposes. And obviously the emergency ceased to exist once the cooling period was over and at some point even maybe you could say well, you should have kept it a day and let him sober up. Maybe so, but at some point that ended, that emergency situation ended.

There's no question in the Court's mind, Mr. Bond, under the law you had constructive possession of this weapon. You put it where it was found. Mr. Bond had access, no question, to the home. There's no question he came and went from that home. I agree it's not your home, you don't live there, but Mr. Bond did come and go. That's what the testimony is and sometimes he spent the night there.

We agree with the trial court's conclusions. Bond admitted at trial that at one time he was aware of both the presence and character of the firearm. Indeed, he personally placed it in its location because he knew it was a dangerous weapon. Bond argues on appeal that he later lost awareness of the presence of the gun by forgetting it. We cannot accept the proposition that one may lose possession or dispossess oneself of property by mere forgetfulness. Creating such a principle would lead to absurd

- 5 -

results, especially in cases of controlled substances or stolen property.[1]

The evidence presented at trial also sufficiently proved the second element:  dominion and control over the firearm.  Though not in Bond's residence, the gun was in an apartment that Bond frequented on a regular basis and often stayed overnight.  Bond admitted placing the firearm there without asking the consent of the apartment's owner, and when asked by the apartment's owner what he planned to do with it, he stated that he was going to hold it until he decided to return it to the gun's owner.  Bond thereafter had unrestricted access to the firearm.

The circumstances after the emergency had passed evidence Bond's dominion and control over the firearm such that, when combined with Bond's actual knowledge of the presence and character of the gun, the evidence is sufficient to support a conviction for possession of a firearm after having been convicted of a felony.

<u>Affirmed.</u>

---

[1]This case is distinguished from <u>Hancock</u>, in which the trial court found only that the defendant <u>should have known</u> about the presence of the firearm, a standard lower than the statutorily prescribed "knowingly and intentionally possess[ing]."  <u>Hancock</u>, 21 Va. App. at 469, 465 S.E.2d at 140; <u>see</u> Code § 18.2-308.2. Here, Bond concedes that he actually <u>knew</u> about the firearm at one time, and thereafter forgot it.

Benton, J., dissenting.

"A conviction for knowingly and intentionally possessing a firearm after having been convicted of a felony, see Code § 18.2-308.2, requires proof beyond a reasonable doubt of either actual or constructive possession of the firearm." Hancock v. Commonwealth, 21 Va. App. 466, 468, 465 S.E.2d 138, 139 (1995). Furthermore, almost one hundred and thirty years ago, the United States Supreme Court in United States v. Kirby, 74 U.S. 482 (1868), discussed the need to distinguish circumstances in which apparent criminal conduct would be justifiable and declared to be lawful because of necessity.

> The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, "that whoever drew blood in the streets should be punished with the utmost severity," did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of 1st Edward II, which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire – "for he is not to be hanged because he would not stay to be burnt." And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding of the passage of the mail, or of its carrier, does not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder.

Id. at 487.

In analogous reasoning, this Court has recognized that "'[f]or reasons of social policy, it is better that the

defendant, faced with a choice of evils, choose to do the lesser evil (violate the criminal law) in order to avoid the greater evil threatened by the other person.'" Daung Sam v. Commonwealth, 13 Va. App. 312, 323, 411 S.E.2d 832, 838 (1991) (citation omitted).  The evidence in this appeal proved that John Bond's conduct was justifiable, probably saved another person's life, and was not criminal.

The evidence proved that Willie Deloatch engaged in a fight with another man.  Later, when highly intoxicated, Deloatch approached the man and a group of people on a street.  Deloatch was holding a gun.  A woman in the group, who knew that Bond was Deloatch's friend, went to Bond's grocery store and asked Bond if he would intervene with Deloatch to stop the incident.  Bond, who had been friends with Deloatch for thirty years, went to confront Deloatch.

When Bond arrived, Deloatch had fired the gun three times. Deloatch was intoxicated, had a swollen eye, and was angrily threatening the man with the gun.  Bond spoke with Deloatch and attempted to calm him.  Bond testified that Deloatch's mother had recently died and that Deloatch was upset, crying, and uncaring about his own conduct.  Deloatch announced that he intended to shoot the man.  After Bond reasoned with Deloatch, Deloatch gave him the gun.

Bond then coaxed Deloatch into his car and drove with Deloatch to Gwendolyn Golden's residence.  Golden was Bond's

romantic friend and a person that Deloatch respected. Bond explained to Golden what had occurred and asked to leave the gun with her until Deloatch was sober. She agreed. Bond placed the gun on top of a high cabinet in Golden's kitchen and left with Deloatch.

Two years later, when the police were searching Golden's residence in connection with another matter, a police officer found the gun atop the cabinet. The gun had dust on it and had been undisturbed. The officer testified that the accumulation of dust indicated to him that the gun had been on the cabinet for a long time. Golden testified that she had forgotten about the gun until the police found it.

After the discovery of the gun, another police officer went to Bond's store and questioned Bond about the gun. Bond testified that he then remembered the gun and explained the incident involving Deloatch. The officer arrested Bond for possession of a firearm after having been convicted of a felony. After his arrest, Bond gave the police a written statement in which he stated that he had taken the gun from Deloatch to "keep a person from getting hurt" and that he placed the gun atop a cabinet over the sink at Golden's residence.

The trial judge ruled that Bond's initial, actual possession was justifiable. That ruling was based on the following findings:

> Mr. Bond, in this case I would agree with
> what your lawyer said that the Court
> certainly would not find you guilty of

possessing a firearm under the circumstances
that you took it.  No question you took it
under circumstances where you were trying to
prevent someone from getting hurt and
rightfully so.  You did the right thing, no
question.  I don't think . . . [any] Judge,
. . . [or any] jury in the world would
convict you of possessing a firearm under
those circumstances because you didn't really
intentionally possess it at that time.  The
problem arises after that.

The trial judge then found Bond guilty of constructive

possession of the gun because the gun remained in Golden's

residence.  The judge stated the following rationale for the

conviction:

Now, the code does not allow a convicted
felon to hold a firearm for someone else as
an agent, fiduciary or any capacity.  A
convicted felon is not allowed to hold a gun
for someone, other than some emergency
purposes.  And obviously the emergency ceased
to exist once the cooling period was over and
at some point even maybe you could say well,
you should have kept it a day and let him
sober up.  Maybe so, but at some point that
ended, that emergency situation ended.

There's no question in the Court's mind,
Mr. Bond, under the law you had constructive
possession of this weapon.  You put it where
it was found.  Mr. Bond had access, no
question, to the home.  There's no question
he came and went from that home.  I agree
it's not your home, you don't live there, but
Mr. Bond did come and go.  That's what the
testimony is and sometimes he spent the night
there.

That reasoning and the evidence in the record are insufficient to

support the conviction.

In Hancock, we ruled as follows:

Liability under Code § 18.2-308.2 requires
proof that the accused "knowingly and

intentionally possess[ed] . . . any firearm."
Thus, the Commonwealth must prove a
defendant's actual knowledge of the firearm.
The trial judge misunderstood the requisite
mental state when he ruled that "should have
known" was sufficient. We can affirm this
appeal only if the Commonwealth proved beyond
a reasonable doubt that [the defendant] had
actual knowledge of the presence of the
firearm, i.e. "knowingly and intentionally
possess[ed]" the firearm.

21 Va. App. at 469, 465 S.E.2d at 140 (citations omitted).

The evidence in this case proved that after Bond defused Deloatch's anger and gained possession of the gun, he took the gun to Golden's residence because he believed that Deloatch respected Golden and, thus, would not seek to obtain it from her while he was intoxicated. No evidence proved Bond knowingly or intentionally retained possession of the gun after he delivered it to Golden's residence. Golden testified she had forgotten that the gun was atop the cabinet. Bond also testified that he had forgotten about the gun until the police questioned him about the gun atop the cabinet. In addition, the evidence proved that shortly after the incident Deloatch was incarcerated and likely was unable to obtain the gun from Golden.

Indeed, the trial judge clearly accepted as a fact that Bond had forgotten that the firearm was in Golden's residence. The judge stated the following at sentencing:

Now, I am going to state for the record,
Mr. Bond, in this case that although the
Court has found that you are in constructive
possession of the firearm I think the
evidence indicates that at least from the
Commonwealth's own evidence that you had not
handled this firearm, that what you said

- 11 -

> about where you put the firearm is accurate.
> That you put it up there, that you had not
> gone back and forgotten the firearm, that
> type of thing.  I think the evidence probably
> does support that.

Nevertheless, the trial judge reasoned:
> But the firearm was certainly in a place
> where you had access on a regular basis.  You
> put it there, you knew where it was, and for
> that reason the Court is required under the
> law to make the finding that it made.

In effect, the trial judge ruled that although Bond had forgotten that the gun was above the cabinet in Golden's residence, he should have known the gun was in the residence because he placed it there two years earlier and later visited Golden in the residence.  That rationale cannot support the conviction.  See id.

Furthermore, proof that Bond was present in Golden's residence at various times during the two year period did not negate the undisputed evidence that Bond had forgotten that the gun was atop the cabinet.  Thus, the trial judge could not logically have found that Bond "knowingly and intentionally possess[ed]" the gun.  Code § 18.2-308.2; see also Staples v. United States, 511 U.S. 600, 623 (1994) (Ginsburg, J., concurring) ("'Knowingly possessed' logically means 'possessed and knew that he possessed.'").

Bond had no preconceived design to obtain or keep the gun. He put himself at risk of great injury or death when he disarmed Deloatch.  Bond's conduct manifested the principle "that the law

- 12 -

promotes the achievement of higher values at the expense of lower ones and that '"sometimes the greater good for society will be accomplished by violating the literal language of the criminal law."'" State v. Crawford, 521 A.2d 1193, 1197 (Md. 1987) (citation omitted). Because the evidence proved that Bond forgot about the gun after he justifiably obtained the gun from Deloatch and placed it in Golden's residence, the Commonwealth failed to prove beyond a reasonable doubt that Bond constructively possessed the gun while it remained undisturbed on the cabinet.